# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3605-19

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

      Plaintiff-Respondent,

v.

J.N.P.,

      Defendant-Appellant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF J.J-A.P.,
minor.

_____

Submitted February 10, 2021 – Decided March 25, 2021

Before Judges Alvarez and Geiger.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Cumberland County, Docket No. FG-06-0012-18.

Joseph E. Krakora, Public Defender, attorney for appellant (Phuong Dao, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Mary L. Harpster, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Damen J. Thiel, Designated Counsel, on the brief).

PER CURIAM

Defendant-mother J.N.P.[1] appeals the May 6, 2020 denial of her Rule 4:50-1 motion to vacate the voluntary surrender of her parental rights to her daughter, J., born in 2014. We affirm.

Days after the motion was denied, J. was formally adopted by her paternal grandmother, with whom she has lived since 2018. J. has never lived with her mother. At birth, J. tested positive for opiates and cocaine and was removed from her mother's care. J. is thriving in her paternal grandmother's home.

J.'s brother, however, who was also placed with the grandmother, was not able to remain. He is autistic and, upon leaving his grandmother's residence, plaintiff, New Jersey Division of Child Protection and Permanency (Division), moved him to a specialized treatment home.

---

[1] We use initials to protect the parties' confidentiality. R. 1:38-3(d)(12).

A-3605-19

The Division filed a second guardianship proceeding against J.N.P. and the children's father in 2017.[2] J.N.P.'s surrender was placed on the record immediately before trial was scheduled to begin.

J.N.P., questioned both by her attorney and the judge, testified under oath as follows: that her decision was knowing, intelligent, and voluntary; no one had forced her, coerced her, or threatened her into making the choice; she did not suffer from any disability that would impair her understanding of the proceeding; and she was not under the influence of any substance that could affect her judgment. J.N.P. refused pre-surrender counseling, acknowledging that the option was explained to her. In addition, she initialed the first two pages and signed the third page of the voluntary surrender of parental rights form in which she confirmed her decision in writing. J.N.P. also stated during the proceeding that she knew the children would be placed with their grandmother and that her parental rights would be reinstated if the grandmother did not adopt.

There is no question that J.N.P. has dramatically turned her life around— her ongoing sobriety is corroborated by the fact the Division altered her son's permanency plan with the goal of eventual reunification. The question now on

---

[2] A judgment of termination was entered against the father. He is not involved in this appeal.

A-3605-19

appeal is whether J.N.P.'s surrender should be vacated as to J., her daughter.

J.N.P. raises the following points of error:

POINT I

THE TRIAL COURT'S DENIAL OF [J.N.P.'s] MOTION TO VACATE THE IDENTIFIED SURRENDER MUST BE REVERSED PURSUANT TO RULE 4:50-1 BECAUSE THERE ARE SUBSTANTIAL CHANGED CIRCUMSTANCES AND THE COURT LACKED A SUFFICIENT BASIS TO DETERMINE [J.'s] BEST INTEREST.

A.      The evidence overwhelmingly demonstrates changed circumstances.

B.      The trial court lacked sufficient evidence to determine [J.'s] best interests.

Our scope of review is limited. Generally, findings by a trial court "are binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998). We reverse only when the trial court's findings were "so wide of the mark that a mistake must have been made." N.J. Div. of Youth & Fam. Servs. v. M.M., 189 N.J. 261, 279 (2007) (citations omitted). We leave undisturbed a trial court's decision on a Rule 4:50-1 motion "unless it represents a clear abuse of discretion." Hous. Auth. of Morristown v. Little, 135 N.J. 274, 283 (1994).

4

The judge denied J.N.P.'s application, finding that she had failed to meet the Rule 4:50-1 standard as applied in the context of vacating a voluntary surrender of parental rights. The Supreme Court adopted the relevant two-part test in In re Guardianship of J.N.H., 172 N.J. 440, 474 (2002). First, the movant must present evidence of changed circumstances that "have occurred subsequent to the entry of a judgment to justify vacating [it]." N.J. Div. of Youth & Fam. Servs. v. T.G., 414 N.J. Super. 423, 434 (App. Div. 2010). Second, the trial court must determine the best interests of the child. Id. at 435; see also N.J. Div. of Youth & Fam. Servs. v. L.L., 201 N.J. 210, 228 (2010). The child's best interests must control because the decision has so profound an impact on the child's life. See J.N.H., 172 N.J. at 474-75. We are satisfied that the judge properly weighed the best interests of the child in this case.

Parental rights are never absolute and are always "tempered by the State's parens patriae responsibility to protect the welfare of children." In re Guardianship of K.H.O., 161 N.J. 337, 347 (1999). Thus, we balance the parents' rights against the State's interest in protecting the child through application of the best interests of the child standard. Ibid.; N.J.S.A. 30:4C-15.1(a). Those best interests include stability and permanency, which are

favored over protracted reunification efforts. See N.J. Div. of Youth & Fam. Servs. v. L.J.D., 428 N.J. Super. 451, 484 (App. Div. 2012).

J.N.P. bears the burden of establishing by clear and convincing evidence that vacating her identified surrender is in J.'s best interest. See L.L., 201 N.J. at 215. Despite her successful rehabilitation, J.N.P. has not done so.

The child has been adopted by her grandmother, with whom she has lived for more than two years. We do not agree with J.N.P. that the guardian's representations regarding J.'s excellent adjustment in her adoptive home are not supported by the record. A caseworker visited the home monthly, and the information was conveyed to the guardian and the court. No current bonding evaluations between child and adoptive parent were therefore required. As J.N.P. stated when she surrendered her parental rights, J.'s best interests would be served by termination, where it would free the child for adoption by the grandmother.

"The strong judicial interest in protecting children and preserving the stability of their foster-care arrangements, and in many cases their ultimate adoption, counsels against permitting collateral attacks on such judgments except in rare cases." J.N.H., 172 N.J. at 479. Other than the self-evident benefit of having the child raised by her birth mother, and of being able to establish a

sibling relationship with her brother, only the potential for harm to J. arises from J.N.P.'s application. J.N.P. has had no contact with J. for years, and for all intents and purposes, the child has no relationship with her. J. repeatedly expressed the desire to be adopted by her grandmother.

To vacate the voluntary surrender as to this child would wreak havoc on her life, removing her from the stable home where she has lived for over two years and been adopted. It would not fulfill the State's parens patriae responsibility to act in the child's best interest. Without a doubt, J.N.P. met the first prong of the J.N.H. test. But the judge's decision as to the second prong of J.N.H. is correct and merits affirmance.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

7 A-3605-19